UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH ALBERT FORTIN,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　Civil Action No. 3:16-cv-30019-KAR
　　　　　　　　　　　　　　　　　　　)
CAROLYN W. COLVIN,　　　　　　　　　)
Acting Commissioner of Social Security　　)
Administration,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Defendant　　　　　　　　　　　)

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT
ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF
THE COMMISSIONER
(Dkt. Nos. 17 & 22)

ROBERTSON, U.S.M.J.

Before the court is an action for judicial review of a final decision by the Acting

Commissioner of the Social Security Administration ("Commissioner") regarding an individual's

entitlement to Social Security Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).  Plaintiff Joseph Albert Fortin ("Plaintiff") asserts that the

Commissioner's decision denying him such benefits -- memorialized in an October 31, 2014

decision of an administrative law judge ("ALJ") -- is not supported by substantial evidence.

Specifically, Plaintiff alleges that the ALJ erred by failing to:  (1) find that his diabetes mellitus

II ("DM") was a severe impairment; (2) fully credit his hearing testimony regarding the severity

of his back pain; and (3) include his alleged mental impairments in his residual functional

capacity ("RFC") determination.  Plaintiff has moved for judgment on the pleadings (Dkt. No.

17), while the Commissioner has moved to affirm (Dkt. No. 22).

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the court will ALLOW the Commissioner's motion to affirm and DENY Plaintiff's motion for judgment on the pleadings.

I.      PROCEDURAL BACKGROUND

Plaintiff applied for DIB on July 16, 2010 alleging an onset of disability on July 3, 2010 (Administrative Record ("A.R.") at 223, 228, 408, 410). In his application for DIB, Plaintiff alleged that he was disabled due to essential hypertension and DM (*id.* at 223, 224). The application was denied initially and upon reconsideration (*id.* at 223, 224, 228). Following a hearing on August 16, 2012, the ALJ issued his decision on October 3, 2012 finding Plaintiff was not disabled (*id.* at 190, 233). On December 4, 2013, the Appeals Council remanded the case to the ALJ to address three issues (*id.* at 240-42). The Appeals Council directed the ALJ to offer Plaintiff an opportunity for a second hearing, and to "take any further action needed to update and complete the administrative record and issue a new decision" (*id.* at 242).

The ALJ conducted a second hearing on July 21, 2014 and issued his decision on October 31, 2014 finding Plaintiff was not disabled (*id.* at 149, 156). The Appeals Counsel denied review (*id.* at 1-6), and this appeal followed.

II.     FACTUAL BACKGROUND

Plaintiff has associates degrees in biomedical and industrial electronics (*id.* at 195). He was employed full-time by the Department of Defense in Texas as an instructor of basic electronics and electronics for the Patriot Missile System (*id.* at 198-99). His job involved teaching classes and writing lesson plans (*id.* at 199-200). He stopped working in 2009 when he was 60 years old (*id.* at 223, 224, 410, 413, 415, 625, 690).

A.      Medical Records

1.      Physical condition

In support of the disabling conditions listed in Plaintiff's application for DIB benefits, he presented the ALJ with extensive medical evidence spanning the period from 1998 to 2014. Because Plaintiff challenges the ALJ's decision regarding his DM, back, and alleged mental impairment, the court focuses on Plaintiff's medical history that is related to those conditions.

a.      Diabetes

Plaintiff was diagnosed with DM in about 2003 (A.R. at 707, 1013).  Although Plaintiff's DM was "not optimally controlled" in August 2008, and although Scott K. Silvia, M.D. noted that Plaintiff's diabetes required better control on October 2, 2009, it was "well controlled" by medication on May 20, 2009, on February 26, March 22, and December 8, 2010, on January 10, 2011, on May 12, August 7, and November 13, 2012, and on July 29, 2013 (*id.* at 682, 683-84, 690-91, 782, 807, 841, 850, 877, 879, 914-15, 948, 986).  On May 16, 2014, Plaintiff reported to Nurse Practitioner William Sullivan of the Veterans' Administration Medical Center ("VAMC") in Leeds, Massachusetts that his daily glucose readings approached his target levels (*id.* at 959).

Records from 2008, 2009, 2010, and 2012 show that Plaintiff's diabetic foot examinations were normal (*id.* at 625-26, 815, 849, 907-08).  In August 2013, Plaintiff's dorsalis pedis, posterior tibial pulses, and the sensation in his feet were slightly diminished (*id.* at 983).  A podiatrist's examination in December 2013 revealed that Plaintiff's gross sensation, light touch, and protective sensations were intact, his bilateral muscle strength was assessed at 5 out of 5, the range of motion of his transverse and sagittal ankle and sutalar joints was within normal limits, and no gross abnormalities or digital deformities were observed (*id.* at 1013).  The podiatrist debrided Plaintiff's toenails (*id.*).

b.      Back

On May 12, 2012, Denise Finn-Rizzo, FNP-SC of Orchard Medical Associates, L.L.C., examined Plaintiff who complained of back and right posterior leg pain, and numbness in the back of his right upper thigh that increased with standing or walking for long periods of time (*id.* at 877). Plaintiff denied joint pain or stiffness, and reported that sitting was "OK," the pain increased when he carried heavy items, and his right leg buckled "at times" (*id.* at 878). Finn-Rizzo observed "some tenderness to palpation" over Plaintiff's upper lumbar spine and right mid-paralumbar areas, no sacroiliac ("SI") tenderness, and limited range of motion in all planes (*id.* at 879). A May 15, 2012 x-ray showed "[s]evere facet arthropathy . . . extending from the L2-L3 through the L5-S-1 levels" and "[l]arge anterior osteophytes" around the disc spaces (*id.* at 896). The disc spaces were maintained and the SI joints were normal (*id.*). There was no evidence of spondylolysis or spondylolisthesis (*id.*). Mario Gross, M.D.'s overall impression was that "severe facet arthropathy" was likely producing spinal stenosis (*id.*).[1]

Finn-Rizzo referred Plaintiff to Pioneer Spine and Sports Physicians, P.C. ("Pioneer") where Sandra Rae, NP and Michael J. Woods, D.O. examined Plaintiff on June 18, 2012 (*id.* at 868-71). Plaintiff described numbness in his right leg, occasionally his left, and bilateral buttock pain (*id.* at 868). According to Plaintiff, standing or walking for more than thirty minutes increased his pain (*id.*). The pain subsided, however, when he sat or rested (*id.*). The transition from sitting in a chair to standing was less painful than rising from a flexed position (*id.*). Plaintiff reported that he exercised a few times a week (*id.* at 869).

---

[1] "Spinal stenosis is the narrowing, or stricture, of the vertebral column." *Bruso v. Barnhart*, No. 04-CV-240-PB, 2005 WL 1528765, at *1 (D.N.H. June 29, 2005) (citing *Stedman's Medical Dictionary* 1450, 1473 (25th ed. 1990)).

Upon examination, Plaintiff's spine displayed full range of motion without discomfort, his heel and toe walk was normal, his reverse straight leg raise ("SLR") was positive bilaterally, and his SLR was negative bilaterally (*id.*).[2]  His hips, thighs, and feet were unremarkable (*id.* at 869-70).  After the physical examination and review of Plaintiff's x-rays, the examiners concluded that Plaintiff's symptoms were facet pain and spinal stenosis (*id.* at 870).  Although physical therapy was recommended, Plaintiff wished to postpone it due to required insurance co-payments (*id.*).  Treatment by injections and swimming for exercise were also discussed (*id.*).  According to the report, Plaintiff "plan[ned] to continue use of ibuprofen and naproxen for pain relief" (*id.*).

The VAMC record of August 6, 2012 indicates that Plaintiff had "long standing back pain with numbness to [his] right ext[remities]" (*id.* at 917).  At that time, Plaintiff reported that meloxicam provided relief (*id.*).  He gave the same assessment of meloxicam to VAMC examiners on February 15, 2013 and May 16, 2014 (*id.* at 959, 991).  In May 2014, Plaintiff indicated that he took daily walks, "got back to the gym," and planned to swim (*id.* at 963-64).

2.    Mental condition

In September and October 2009, Dr. Silvia diagnosed Plaintiff with acute adjustment disorder with insomnia and depression along with DM and obesity, gave him a sample of medication, and ordered laboratory tests (*id.* at 691, 693).  On May 20, 2010, Plaintiff reported to Esteban Quirarte, M.D. of the Veterans' Administration Health Care Services ("VAHCS") in El Paso, Texas that he was experiencing stress due to his recent job loss (*id.* at 625).  However, on

---

[2] "The [SLR] test . . . is used to detect nerve root pressure, tension or irritation.  A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees.  A positive SLR is said to be the most important indication of nerve root pressure." *Mattison v. Astrue*, No. 07-CV-1042 (VEB), 2009 WL 3839398, at *4 (N.D.N.Y. Nov. 16, 2009).

June 12, 2012, the Pioneer examiners reported that Plaintiff denied being depressed and noted that his mood was "consistently euthymic" during the examination (*id.* at 869-70). Screenings for depression were negative at the VAMC on August 6, 2012 and May 6, 2014 (*id.* at 907-08, 961).

      B.    RFC Assessments

         1.    Carol N. Abalihi, M.D., PA

Dr. Abalihi examined Plaintiff in El Paso, Texas on September 27, 2010 (*id.* at 707). Dr. Abalihi obtained Plaintiff's medical history and conducted a complete physical examination (*id.* at 707-09). A summary of the portions of her report that are relevant to this court's analysis follows.

Dr. Abalihi observed that Plaintiff was "very obese," his gait was normal, he did not use an assistive device for ambulation, and did not experience difficulty getting on and off the examination table (*id.* at 708). Her examination of his musculoskeletal system showed the absence of joint effusion, peripheral edema, varicosities, and joint and spine tenderness (*id.*). His pulses were 2+ bilaterally (*id.*). All Plaintiff's joints, including his spine, demonstrated full range of motion (*id.*). He demonstrated 5/5 muscle strength in all muscle groups, including his grip (*id.*).

Dr. Abalihi's neurological examination revealed that Plaintiff's speech and affect were normal and his memory was intact, as were his pin-prick and light touch sensations (*id.*). He was able to walk on his heels and toes, tandem-walk, squat, and hop without difficulty (*id.*). His SLRs were to 70 degrees bilaterally (*id.*). Deep tendon reflexes were 2+ bilaterally and plantar reflex was flexor (*id.*).

Based on her examination, Dr. Abalihi offered the following opinion:

. . . [Plaintiff] should be limited to lifting/carrying 20 [pounds] occasionally and 10 [pounds] frequently and standing/walking to 4 hours in an eight-hour workday.  He needs a more objective assessment of his hearing.  He has no significant limitations to sitting, reaching, handling objects or hearing.

(*id.* at 709).

2. State agency reviewers

Manda Waldrep, M.D., a nonexamining medical consultant, assessed Plaintiff's RFC on October 20, 2010 (*id.* at 710, 717).  She opined that Plaintiff could:  (1) lift 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk and sit, with normal breaks, for about six hours in an eight hour workday; and (3) push and/or pull without limitation (*id.* at 711).  She further determined that Plaintiff did not have postural, manipulative, visual, communicative, or environmental limitations (*id.* at 712-15).  Dr. Waldrep noted the absence of end organ damage due to diabetes (*id.* at 715).  She further observed that Plaintiff "allege[d] pain in [his] joints[,] etc. on the ADL form[,] but denie[d] it at the physical exam" and opined that his "alleged limitations [were] not wholly supported by the evidence" (*id.* at 715).  On May 31, 2011, Robin Rosenstock, M.D. agreed with Dr. Waldrep's assessment (*id.* at 860).

C.   The ALJ Hearings

1. The August 16, 2012 hearing

Plaintiff and independent vocational expert ("VE") Baily testified before the ALJ at the first hearing on August 16, 2012 (*id.* at 190-91).  Plaintiff reported that he drove, shopped, bathed and groomed himself, paid the bills, used the internet, and could take care of himself if he was required to do so (*id.* at 197, 206, 207).  He was able to help with house cleaning, but took breaks (*id.* at 217).  In addition, he and his wife usually cared for his ten and thirteen year old grandchildren after school and all day during school vacations (*id.* at 197).  Plaintiff reported that he walked about one half mile every day, could sit comfortably for thirty minutes to an hour,

could stand comfortably for twenty to thirty minutes, and "maybe" could lift and carry twenty pounds (*id.* at 205-06, 207-08).

Plaintiff told the ALJ that he did not have any mental health issues and that his diabetes was "in check" for the "first time in a long time" (*id.* at 201-02, 206).  His target hemoglobin A1C level was 6.5 and it was 6.7 the last time it was tested (*id.* at 213).

According to Plaintiff, his low back pain started in about 2009 and he suffered from it almost every day (*id.* at 209, 214).  He described it as "[v]ery sharp, burning pain" that interfered with his sleep (*id.* at 214, 216).  He also suffered from "pins and needles" in his right leg (*id.* at 215).  The pain was most intense when he bent over from the waist and was relieved when he reclined (*id.* at 215, 216).  He took prescription pain medication and Advil and used heat to alleviate the pain (*id.* at 208-09, 215).  On a scale of 1 to 10, his back pain was an 8 without medication and a 3 with medication (*id.* at 209).  He had not been prescribed a back brace or any assistive device (*id.* at 216).  Pioneer recommended physical therapy and he was trying to get it through the VAMC (*id.* at 215).

The VE testified that Plaintiff's prior position as an instructor was classified as a light, skilled position in the Dictionary of Occupational Titles (*id.* at 218, 219).  In order to obtain the VE's opinion of whether jobs existed in the national economy, the ALJ described a hypothetical individual with the Plaintiff's age, education, and work experience who was limited to light work away from a loud, noisy environment with no more than incidental exposure to extremes of cold, heat, fumes, dust, gases, or humidity, and who would not be required to lift or reach overhead, or to work at heights, or to use ladders, ropes, or scaffolding (*id.* at 219).  The VE opined that the hypothetical person could perform Plaintiff's past job as an instructor (*id.*).  If the person was unable to use foot or leg controls, her opinion remained the same (*id.* at 220).  However,

positions would not be available for a person who was off task at least twenty-five percent of the workday, or who missed three or more days of work per month (*id.*).

        2.      The July 21, 2014 hearing

Plaintiff and VE Bailey testified at the second hearing before the ALJ on July 21, 2014 (*id.* at 156).  Plaintiff testified that he drove to the store and drove from Springfield to Rhode Island to visit his mother-in-law about four times a year, sometimes without stopping (*id.* at 161, 162-63, 171, 182).  He was able to bathe, groom, and dress himself, and used the internet "once in a while" (*id.* at 171).  He accompanied his wife grocery shopping, but pushed the cart for support (*id.* at 182).

According to Plaintiff, the condition of his lower back posed the most significant physical impediment to him working (*id.* at 163-64).  The pain in his back travelled to his buttocks and both legs (*id.* at 165, 175-76).  He described the pain as feeling like someone was stabbing him with a knife (*id.* at 176, 183).  The discomfort increased if he stood or sat too long, if he walked too far, and if he bent over (*id.* at 176-77, 180).  He could comfortably sit for twenty to thirty minutes and stand for ten to fifteen minutes (*id.* at 179).  He walked a little less than one-half mile per day (*id.* at 171-72, 179).  He claimed that he had difficulty climbing stairs (*id.* at 180).  He was able to lift and carry about ten pounds (id. at 179).  If he overexerted himself one day, he was sedentary the next (*id.* at 184).

He "[m]ostly" took Advil every four hours for pain relief, but took meloxicam two or three times a week when the Advil was not effective (*id.* at 165).  Plaintiff rated his pain at 6 out of 10 without medication, and 4 or 5 out of 10 with medication (*id.* at 165-66).  He also applied heat, elevated his legs, and wore a back brace, or belt, to alleviate the pain, and walked with a

cane occasionally because his legs "kind of g[a]ve out a couple times" (*id.* at 164, 176-77).  The back brace helped "sometimes" (*id.* at 176).

According to Plaintiff, the pain caused him to become angry "real quick" and to "not want to do anything" (*id.* at 172-73, 181).  However, he did not take medication for a mental condition and was not being treated by a therapist or psychiatrist (*id.* at 173, 182).

Plaintiff reported that he still treated his diabetes with oral medication, as opposed to injections (id. at 168).  His blood sugar readings were between 130 and his target level of 150 (*id.* at 175).  His only diabetes-related symptoms were "[s]leepiness" and feeling "[w]oozy" (*id.* at 168, 175).

The VE testified that Plaintiff's past positon as an instructor for the military was classified as sedentary in the Dictionary of Occupational Titles, but, based on Plaintiff's description of his duties, it was sedentary to light as he performed it (*id.* at 185-86).  The ALJ repeated the hypothetical from the first hearing, including the limitations on using foot or leg controls, with the following additional restrictions:  occasional (one-third of the work day) stooping, crouching, crawling, kneeling, and climbing ramps and stairs (*id.* at 186-87).  The VE opined, again, that the hypothetical person could perform Plaintiff's past job as an instructor (*id.* at 187).  However, she indicated that no jobs existed in the national and regional economies if the person was unable to work for twenty-five percent of the workday or was absent three or more days a month (*id.* at 187-88).

D.    The ALJ's October 31, 2014 Decision

In order to qualify for DIB, a claimant must demonstrate that he was disabled within the meaning of the Social Security Act (the "Act") prior to the expiration of his insured status.  *See* 42 U.S.C. § 423(a)(1)(A), (D).  Plaintiff's insured status is not challenged.  "The only question is

whether the ALJ had substantial evidence with which to conclude that Plaintiff did not suffer from a disability." *Bitsacos v. Barnhart*, 353 F. Supp. 2d 161, 165-66 (D. Mass. 2005).

The Act defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). *See generally Bowen v. Yuckert,* 482 U.S. 137, 146–49 (1987).

In determining whether Plaintiff was disabled, the ALJ conducted the five-part analysis required by the regulations. *See* 20 C.F.R. § 404.1520(a); *see also Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process). The claimant has the burden of proof through step four of the analysis. *See Goodermote*, 690 F.2d at 7. At step five, the Commissioner has the burden of showing the existence of jobs in the national economy that the claimant can perform notwithstanding impairment(s). *See id.* If a hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step. *See* 20 C.F.R. § 404.1520(a)(4).

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 3, 2010 (A.R. at 144). *See* 20 C.F.R. § 404.1571 *et seq*. At step two, the ALJ found that Plaintiff was severely impaired due to "degenerative disc

disease, coronary artery disease, sleep apnea, osteoarthritis of the right knee, obesity, and right-sided hearing loss" (A.R. at 144).  *See* 20 C.F.R. § 404.1520(c).  The ALJ found that Plaintiff's blood pressure and diabetes were well-controlled and were not severe impairments (A.R. at 144).  In addition, Plaintiff "testified to having no psychological issues and undergoing no regular mental health treatment" (*id.*).  For purposes of step three, Plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.* at 145).

Before proceeding to steps four and five, the ALJ assessed Plaintiff's RFC for use at step four to determine whether Plaintiff could do past relevant work and, if the analysis continued to step five, to determine if Plaintiff could do other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  "The RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  Social Security Regulation ("SSR") 96-8p, 1996 WL 374187, at *2 (July 2, 1996).  Put another way, "[a]n individual's RFC is defined as 'the most you can still do despite your limitations.'"  *Dias v. Colvin*, 52 F. Supp. 3d 270, 278 (D. Mass. 2014) (quoting 20 C.F.R. § 416.945(a)(1)).

The ALJ determined that Plaintiff had the RFC to perform light work,[3] with the following limitations:

---

[3] The Social Security Administration ("SSA") defines light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [the SSA] determine[s] that he or she can also do

[He must] avoid loud and noisy environments.  He must avoid overhead lifting or reaching.  He is limited to no more than incidental exposure to extreme cold, heat, fumes, dust, gases or humidity.  [He] must avoid work at heights or using ladders, ropes, or scaffolding.  He is limited to no more than occasional climbing of ramps/stairs, stooping, kneeling, crouching, and crawling.  [He] must avoid use of foot/leg controls.

 (A.R. at 145).

At step four, the ALJ found that Plaintiff was able to perform his past relevant work as an instructor and, therefore, Plaintiff was not disabled (*id.* at 149).  *See* 20 C.F.R. § 404.1565.

III.     ANALYSIS

A.     Standard of Review

The District Court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for a rehearing.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Judicial review "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence."  *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).  The court reviews questions of law de novo, but must defer to the ALJ's findings of fact if they are supported by substantial evidence.  *See id.* (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).  Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion.'"  *Irlanda Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir.

---

sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

.

1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir. 1981)).

"Complainants face a difficult battle in challenging the Commissioner's determination because,

under the substantial evidence standard, the [c]ourt must uphold the Commissioner's

determination, 'even if the record arguably could justify a different conclusion, so long as it is

supported by substantial evidence.'"  *Amaral v. Comm'r of Soc. Sec.*, 797 F. Supp. 2d 154, 159

(D. Mass. 2010) (quoting *Rodriguez Pagan v. Sec'y of Health & Human Servs.,* 819 F.2d 1, 3

(1st Cir. 1987)).  In applying the substantial evidence standard, the court must be mindful that it

is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts

in the evidence, and draw conclusions from such evidence.  *See Irlanda Ortiz,* 955 F.2d at 769.

That said, the Commissioner may not ignore evidence, misapply the law, or judge matters

entrusted to experts.  *See Nguyen,* 172 F.3d at 35.

  B. <u>Plaintiff's Objections</u>

  Plaintiff alleges that the ALJ made three errors in his denial of DIB:  (1) he erred by

finding, at step two, that Plaintiff's DM was not a severe impairment because that determination

was inconsistent with the ALJ's first decision in which he concluded that it was a severe

impairment; (2) he made factual errors that undermined his negative credibility finding regarding

the severity of Plaintiff's back pain; and (3) he failed to consider Plaintiff's alleged mental

impairment in his RFC determination (Dkt. No. 18).  Each of Plaintiff's objections will be

discussed in turn.

    1. There is no record evidence that Plaintiff's DM was a severe impairment
     and, even if it was, the record is devoid of evidence that it impacted his
     ability to work.

  In support of his first argument -- that the ALJ erred by omitting from Plaintiff's RFC his

limitations caused by DM -- Plaintiff cites the inconsistency between the ALJ's October 3, 2012

step two finding that Plaintiff's DM was a severe impairment, and his step two finding two years later, after remand by the Appeals Council, that Plaintiff's DM "imposed no more than minimal limitations" (Dkt. No. 18 at 8-12; A.R. at 144, 230).  Plaintiff contends that his DM was a severe impairment that had "a significant impact on [his] ability to perform basic work activities" (Dkt. No. 18 at 12).  Upon review of the record, the court concludes that Plaintiff's contention is not supported, and, alternatively, if the ALJ erred at step two, the error was harmless.

In October 2012, the ALJ determined that Plaintiff's DM was a severe impairment at step two, but because Plaintiff's past work as an instructor "did not require the performance of work related activities precluded by [his RFC]," the ALJ concluded that Plaintiff was not disabled (A.R. at 230, 233).  The Appeals Council vacated the ALJ's decision, remanded the case to the ALJ to address Plaintiff's obesity and adjustment disorder, and Dr. Abalihi's opinion that Plaintiff could stand or walk for four hours out of an eight hour workday (*id.* at 240-41).  The Appeals Council further directed the ALJ to offer Plaintiff a new hearing and "issue a new decision" (*id.* at 240-42).  The ALJ complied with the Appeals Council's order by addressing its questions, holding a hearing, and issuing a new decision on October 31, 2014 (*id.* at 142-49).  See 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.").  This time, the ALJ found at step two that Plaintiff's DM was not a severe impairment because it was "well-controlled" (A.R. at 144).  However, the ALJ's ultimate conclusion was unchanged:  Plaintiff was not disabled because he could do his past work as an instructor, which was "sedentary as performed" (*id.* at 149).

Although "the Step 2 severity requirement is . . . a *de minimis* policy, designed to do no more than screen out groundless claims," *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986), the ALJ evaluated all the evidence of Plaintiff's DM "and determined, within [his] authority, that [it] did not rise to the level of a 'severe' impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c)." *Healy v. Colvin,* Civil Action No. 12-30205-DJC, 2014 WL 1271698, at *9 (D. Mass. Mar. 27, 2014). "A mere diagnosis is insufficient to establish that an impairment is severe[,] as defined by the regulations." *Church v. Astrue,* Civil Action No. 10–cv–30236–FDS, 2012 WL 369424, at *8 (D. Mass. Feb. 2, 2012) (citing 42 U.S.C. § 423(d)(2)(B)). "An impairment or combination of impairments is 'severe' if it significantly limits an individual's physical or mental ability to perform basic work activities, which in turn is defined as 'the abilities and aptitudes necessary to do most jobs.'" *Church,* 2012 WL 369424, at *8 (quoting 20 C.F.R. §§ 404.1520(c), 1521(b)). "The claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice." *Id.* (citing 20 C.F.R. §§ 404.1508, 416.908); *Grady v. Astrue,* 894 F. Supp. 2d 131, 142 (D. Mass. 2012) ("A plaintiff's description of symptoms and limitations cannot by itself establish disability; the ALJ must also consider objective medical evidence and any other available evidence, such as medications and daily activities, to determine whether the plaintiff's testimony is consistent with the remainder of the record"). "The ALJ has discretion to determine whether an impairment is severe, so long as [ ]he demonstrates that [ ]he reviewed the entire medical record and has 'substantial evidence' to support [his] finding." *Healy*, 2014 WL 127698, at *9. *See Noel v. Astrue,* C.A. No. 11–cv–30037–MAP, 2012 WL 2862141, at *6 (D. Mass. July 10, 2012).

Substantial evidence supports the ALJ's 2014 finding that Plaintiff's DM was well-controlled and did not interfere with his ability to work and, therefore, was not a severe impairment at step two (A.R. at 144, 148).  *See Caparro v. Colvin*, C.A. No. 13-175L, 2014 WL 1809576, at *9 (D.R.I. May 7, 2014) (ALJ cited substantial evidence to support her finding at step two that plaintiff failed to sustain her burden of establishing that her gestational diabetes was a severe impairment).  Medical evidence from 2009, 2010, 2011, 2012, and 2013 supported the ALJ's determination that Plaintiff's DM was controlled by medication (A.R. at 146, 147, 148, 683-84, 782, 807, 841, 877, 879, 914-15, 948, 986).  Dr. Waldrep, a state agency consultant, noted the absence of evidence of organ damage caused by Plaintiff's DM (*id.* at 715).  A podiatrist's examination in December 2013 did not reveal any foot impairments that would prevent Plaintiff from performing the work reflected in Plaintiff's RFC (*id.* at 1013).  In May 2014, Plaintiff reported that this daily glucose readings were close to his target levels and he confirmed this at the hearing before the ALJ (*id.* at 168, 174-75, 959). [4]  In addition, Plaintiff

---

[4] Plaintiff, who is represented by counsel, discusses medical records from January 30, 2015 and March 17, 2015 in support of his argument (Dkt. No. 18 at 11-12).  These records were not considered by the ALJ who issued his decision on October 31, 2014 and, although Plaintiff submitted them to the Appeals Council, the fact that they post-dated the ALJ's decision precluded the Appeals Council from using them as a basis to grant review (A.R. at 2, 149).  "Under the regulations, '[i]n reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only where it relates to the period on or before the date of the administrative law judge hearing decision.*'"  *Miller ex rel. K.M. v. Astrue*, Civil Docket No. 2009-12018-RBC, 2011 WL 2462473, at *13 (D. Mass. June 16, 2011) (quoting 20 C.F.R. § 416.1470) (emphasis added).  The Appeals Counsel indicated that Plaintiff could use these records to support a new application (*id.* at 2).  Plaintiff does not argue that these records constitute "new and material" evidence that entitle him to remand.  *See Evangelista v. Sec'y of Health & Human Servs.*, 826 F. 2d 136, 139 (1st Cir. 1987) (to be entitled to remand, a claimant must convince the court that the evidence is both "new" and "material" as those terms are used in 42 U.S.C. § 405(g), and that there was "good cause" for failing to present the evidence earlier); 42 U.S.C. § 405(g) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

developed DM in about 2003 and worked as an instructor until 2009 (*id.* at 690, 707). *Compare Bush v. Shalala*, 94 F.3d 40, 45 (2d Cir. 1996) (expressing support for ALJ's reliance on the fact that claimant had worked for seven years despite allegedly disabling condition).

The ALJ determined that Plaintiff presented no credible evidence that DM interfered with his ability to perform his past work. Plaintiff testified that DM made him sleepy and woozy (*id.* at 146, 168, 175). However, the ALJ was not required to credit this testimony. "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987). In view of Plaintiff's activities of daily living, including walking about one-half mile a day and driving to Rhode Island four times a year, and the lack of support in the medical records for functional limitations caused by DM, the ALJ's credibility assessment is supported (A.R. at 146). *See* SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016) (daily activities are a factor used in assessing the limiting effects of a claimant's symptoms).

Even if the ALJ erred by finding Plaintiff's DM was not severe at step two, Plaintiff had other severe impairments at step two and, therefore, was not denied benefits based on the ALJ's

---

*Compare McDonald v. Soc. Sec. Admin. Comm'r*, No. 1:09-cv-473-JAW, 2010 WL 2680338, at *2 (D. Me. June 30, 2010), *adopted sub nom. McDonald v. Soc. Sec. Admin. Comm'r*, Civil No. 09-473-B-W, 2010 WL 2899605 (D. Me. July 20, 2010) ("The party seeking remand must show that the evidence is not merely cumulative and that consideration of the evidence is essential to a fair hearing; that the earlier decision 'might reasonably have been different' had the evidence been considered by the Commissioner.") (quoting *Evangelista*, 826 F.2d at 140). Even if Plaintiff had made the requisite showing and asked the court to consider the 2015 treatment records, one of which shows that Plaintiff was injecting Lantus to treat his diabetes, the records do not contradict the earlier reports that show Plaintiff's DM was controlled and did not impair his ability to work (A.R. at 106, 108).

finding that Plaintiff's DM was not severe (A.R. at 144). "Plaintiff's argument founders on the well-settled principle that a claimant cannot demonstrate harmful error at Step Two unless the failure to make severity findings ends the analysis. Courts consistently label such omissions as harmless as long as the ALJ finds some severe impairment so that the analysis continues." *White v. Colvin*, No. CA 14-171 S., 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015). *See Hines v. Astrue*, Civil No. 11-cv-184-PB, 2012 WL 1394396, at *12 (D.N.H. Mar. 26, 2012), *adopted sub nom. Hines v. U. S. Soc. Sec. Comm'r*, Civil No. 11-cv-184-PB, 2012 WL 1393063 (D.N.H. Apr. 20, 2012). Remand for the purpose of having the ALJ explain the discrepancy between his assessment of DM in 2012 and in 2014 would serve no useful purpose because the ALJ found that DM imposed, at most, "minimal limitations" and "[i]n assessing RFC, the adjudicator must consider limitations imposed by all of an individual's impairments, even those that are not 'severe'" (A.R. at 144). *Id.* (citing SSR 96–8p, 1996 WL 374184, at *5). The ALJ complied with this requirement (A.R. at 145).

      2.      The ALJ's credibility assessment of Plaintiff's testimony regarding the severity of his back pain was supported by substantial evidence.

Plaintiff's second objection focuses on the ALJ's negative evaluation of Plaintiff's credibility regarding the severity of his back pain. "When an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding." *Howcroft v. Colvin*, C.A. No. 15-201S, 2016 WL 3063858, at *9 (D.R.I. Apr. 29, 2016), *adopted,* C.A. No. 15-201 S, 2016 WL 3072254 (D.R.I. May 31, 2016) (citing *DaRosa v. Sec'y of Health & Human Servs*., 803 F.2d 24, 26 (1st Cir. 1986)). "A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record." *Rosa v. Astrue*, 783 F. Supp. 2d 179, 188 (D. Mass. 2011) (citing *Frustaglia,* 829 F.2d at 195). "An ALJ's determination as to a claimant's

credibility . . . is entitled to deference because it is the ALJ who observed the claimant, evaluated [his] demeanor, and considered how that testimony fit in with the rest of the evidence." *Id.* at 188-89.

Plaintiff argues that the ALJ's credibility assessment is not supported by substantial evidence because the record evidence contradicts certain factual findings (Dkt. No. 18 at 13-15). As is the case with Plaintiff's first issue, any error in the ALJ's factual findings was harmless due to the medical and other evidence upon which the ALJ relied.

"Pain may serve as a separate and independent ground for disability." *Rosa*, 783 F. Supp. 2d at 187-88 (citing *Gagnon v. Sec'y of Health & Human Servs.,* 666 F.2d 662, 666 n.8 (1st Cir. 1981)). When, as here, "the medical signs or laboratory findings show that [a claimant has] . . . medically determinable impairment(s) that could reasonably be expected to produce [his] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [claimant's] symptoms so that [the ALJ] can determine how [claimant's] symptoms limit [his] capacity for work" (A.R. at 146). 20 C.F.R. § 404.1529(c)(1). *See also Pires v. Astrue,* 553 F. Supp. 2d 15, 22 (D. Mass. 2008). "This [second] step requires an appraisal of the credibility of the person's statements regarding his or her symptoms and their functional effects." *Id.* (citing SSR 96-7p, 1996 WL 362209, at *1 (July 2, 1996)). "An individual's statement as to pain is not, by itself, conclusive of disability." *Rosa*, 783 F. Supp. 2d at 188 (citing 42 U.S.C. § 423(d)(5)(A)). Credibility determinations are performed in two stages. *See Rosa*, 783 F. Supp. 2d at 188 (citing *Rohrberg v. Apfel,* 26 F. Supp. 2d 303, 309 (D. Mass. 1998)); *Pires*, 553 F. Supp. 2d at 23. The ALJ first conducts "a proper inquiry into the claimant's symptoms of pain." *Rosa*, 783 F. Supp. 2d at 188. Then the ALJ "articulate[s] specific and adequate reasons for

determining that the testimony regarding the symptoms of pain is not credible, or the record must be obvious as to the credibility finding." *Id.*

The ALJ's first stage probe of Plaintiff's subjective allegations of pain correctly included the inquiry required by the First Circuit into the so-called *Avery* factors:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4. Treatment, other than medication, for relief of pain;

5. Functional restrictions; and

6. The claimant's daily activities.

*Avery v. Sec'y of Health & Human Servs.,* 797 F.2d 19, 29 (1st Cir. 1986).  *See Rosa*, 783 F. Supp. 2d at 188.  Plaintiff testified that his low back arthritic pain began in 2009 (A.R. at 145-46, 209, 214).  In response to the ALJ's queries at the second hearing in July 2014, Plaintiff described the persistent, stabbing pain that radiated from his lower back to his buttocks and to both legs (*id.* at 164-65, 175-76, 183).  According to Plaintiff, standing and sitting too long, walking too far, and bending exacerbated his pain (*id.* at 146, 177, 180).  He told the ALJ that he took Advil every four hours to relieve the pain, but also took meloxicam two or three times a week, and wore a back brace, applied heat, and elevated his legs (*id.* at 146, 164, 165, 176, 177).  His pain was 4 or 5 on a scale of 10 with medication, and was 6 on a scale of 10 without medication (*id.* at 145, 165-66).  Plaintiff testified that he was able to comfortably stand for about ten to fifteen minutes, sit for about twenty to thirty minutes, walk a little less than one-half mile a day, and lift and carry about ten pounds (*id.* at 146, 171-72, 176, 179).  He could climb and descend the stairs in his home by using both railings (*id.* at 146, 180).  He drove from

21

Springfield to Rhode Island about four times a year, sometimes without stopping (*id.* at 146, 161, 162-63, 171, 182).  He also drove to the store, shopped with his wife, although he held the cart for support, independently bathed, dressed, and groomed himself, and occasionally used the internet (*id.* at 145-46, 171, 182).

Utilizing the *Avery* factors, the ALJ articulated several reasons for discounting Plaintiff's testimony regarding the severity of his pain (*id.* at 146-47).  Specifically, the ALJ concluded that Plaintiff's description of his pain's intensity was contradicted by:  (1) the objective medical findings; (2) the extent of Plaintiff's daily activities; (3) the consultants' opinions; (4) and Plaintiff's history of "conservative" treatment (*id.*).  *See Howcroft*, 2016 WL 3063858, at *10 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the record.") (citing SSR 96-7p, 1996 WL 374186, at *5-6).

The ALJ cited Plaintiff's May 2012 x-rays to support his credibility assessment.  *See* SSR 16-3p, 2016 WL 1119029, at *5.  The radiographs showed that "severe facet arthropathy" was likely producing spinal stenosis, but that the disc spaces were maintained, the SI joints were normal, and there was no evidence of spondylolysis or spondylolisthesis (A.R. at 147, 896). Pioneer confirmed the diagnosis of facet pain and spinal stenosis in June 2012 and observed that Plaintiff had full range of motion in his spine without pain, normal heel and toe walk, positive reverse SLRs, and negative SLRs (*id.* at 869-70).

In conformance with the regulations, the ALJ's credibility assessment did not rely solely on the objective medical evidence.  *See Pires*, 553 F. Supp. 2d at 23 ("'[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an

individual's credibility and must be considered in the context of all the evidence.'") (quoting SSR 96-7p, 1996 WL 374186, at *6).  "[E]vidence of daily activities can be used to support a negative credibility finding." *Teixeira v. Astrue,* 755 F. Supp. 2d 340, 347 (D. Mass. 2010).  At an appointment with a cardiologist at the El Paso VAHCS on December 15, 2010, Plaintiff reported that he walked four blocks three to four times per week (A.R. at 147, 809).  During Finn Rizzo's examination in May 2012, Plaintiff denied joint pain and stiffness and pain when sitting, but reported that his back pain increased when he carried heavy objects (*id.* at 147, 878).  In May 2014, Plaintiff told care providers at the VAMC that he walked daily, was going to the gym, and planned to swim after dinner (*id.* at 146, 148, 963-64).  He informed the ALJ that he walked a little less than one-half mile each day, a degree of activity that the ALJ found to be "inconsistent with sedentary work" (*id.* at 146).  Notwithstanding Plaintiff's testimony that he was not able to sit comfortably for twenty to thirty minutes, he testified that he traveled by car from Springfield to Rhode Island to visit his mother-in-law four times a year, and sometimes drove straight through without needing a break (*id.* at 146, 161, 162-63, 171, 182).

The ALJ gave "significant weight" to Dr. Waldrep's RFC assessment that Plaintiff could perform light work without restrictions because the nonexamining consultant's opinion was consistent with the record evidence through her review date of October 2010 (*id.* at 147, 711).  At that time, Plaintiff's gait was normal and he did not use an assistive device (*id.* at 715).  Dr. Waldrep recognized inconsistencies between Plaintiff's "alleged limitations" and the evidence she reviewed (*id.*).  Acknowledging the temporal lag between Dr. Waldrep's report and his decision, the ALJ noted:  "the later adduced evidence does not contraindicate a [RFC] for light exertional work (although [he] imposed additional nonexertional limitations)" (*id.* at 147).  A

second state agency consultant, Dr. Rosenstock, confirmed Dr. Waldrep's assessment of Plaintiff's RFC on May 31, 2011 (*id.* at 860).

The ALJ assigned "some weight" to Dr. Abalihi's opinion because she was "not a treating source" and because her opinion that Plaintiff could stand and/or walk for four hours in an eight hour workday was inconsistent with the other record evidence, including her examination of Plaintiff and her opinion as to his other limitations (*id.* at 146-47, 709). "It is the [ALJ's] province to resolve conflicts in the medical evidence." *Rodriguez Pagan*, 819 F.2d at 4. *See MacMillian v. Astrue*, No. C.A. 07-428S, 2008 WL 5412176, at *10 (D.R.I. Dec. 29, 2008) (inconsistencies on the face of a medical report supported the ALJ's decision to decline to give the provider's opinion "'full probative weight'"). Dr. Abalihi reported that Plaintiff's gait was normal, his joints, including his spine, displayed full range of motion, and his muscle strength was 5/5 in all muscle groups (A.R. at 146, 708). In addition, she observed that Plaintiff had no trouble getting on and off the examination table, walking on his heels and toes, performing the tandem walk, squatting, and hopping (*id.*). Dr. Abalihi opined that Plaintiff occasionally could lift and carry twenty pounds, could frequently lift and carry ten pounds, and could sit, reach, and handle objects without limitation (*id.* at 147, 709).

The medication Plaintiff used to control his pain and his other "conservative" treatment were factors in the ALJ's credibility assessment (A.R. at 146). *See* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7. The ALJ recognized that, in addition to over-the-counter medication, Plaintiff took prescription meloxicam for pain relief and declined Pioneer's physical therapy recommendation due to the required insurance co-payments (*id.* at 146, 148). However, in discounting Plaintiff's allegations of pain intensity, the ALJ noted Plaintiff's exclusive use of nonprescription medication and rejection of physical therapy (*id.*). Plaintiff contends that these

factual findings are erroneous and, accordingly, undermine the ALJ's credibility assessment (Dkt. No. 18 at 13-15).

Plaintiff correctly notes the lack of record support for the ALJ's statement that Plaintiff relied solely on over-the-counter medication for pain relief (Dkt. No. 18 at 13-15; A.R. at 148). But notwithstanding this factual error regarding specific medication, the ALJ's overall conclusion -- that Plaintiff's back pain was relieved by conservative treatment -- was accurate and supported the ALJ's credibility determination (A.R. at 146).[5]  Plaintiff testified that his pain was "mostly" controlled with Advil, but he also took meloxicam, applied heat, used a back brace, and elevated his legs (*id.* at 164-65, 176-77, 179).  In 2012, 2013, and 2014, he reported to treatment providers that meloxicam provided pain relief (*id.* at 917, 959, 991).  *See Kisling v. Chater,* 105 F.3d 1255, 1257 (8th Cir. 1997) (concluding that, if an impairment can be controlled through treatment or medication, it cannot be considered disabling); *Northness v. Colvin*, Case No. 1:15-cv-00519-CWD, 2017 WL 507623, at *4, *11 (D. Idaho Feb. 7, 2017) (affirming ALJ's determination that plaintiff was not disabled based, in part, on evidence that meloxicam improved plaintiff's pain); *Breshears v. Colvin*, Civil No. 2:15-cv -02002-MEF, 2016 WL 850797, at *5 (W.D. Ark. Mar. 3, 2016), *judgment entered,* Civil No. 2:15-cv-02002-MEF, 2016 WL 837939 (W.D. Ark. Mar. 3, 2016) (plaintiff's "use of over-the-counter pain relievers such as Aleve and Ibuprofen and non-steroidal anti-inflammatories such as Meloxicam to treat her pain" was a factor that supported the ALJ's finding that plaintiff's claim of disabling pain was not credible); *Woods v. Astrue*, Civil Action No. 11-10112-RWZ, 2012 WL 2126893, at *10 (D.

---

[5] In support of his argument that treatment was not conservative, Plaintiff cites his treatment records that list "Hydrocodone 7.5/Acetaminophen 500 mg." as "active" medication (Dkt. No. 18 at 15).  However, evidence is absent from the record indicating that this medication was prescribed to relieve Plaintiff's back pain, or that he took it for that reason.

Mass. June 13, 2012) (evidence that plaintiff's pain was well-controlled on medication undermined her credibility).

As for Plaintiff's refusal of physical therapy at Pioneer, "[i]t is well settled that an ALJ may infer that symptoms are not as severe as alleged when the claimant declines treatment to address them." *Mariano v. Colvin*, C.A. No. 15-018ML, 2015 WL 9699657, at *11 (D.R.I. Dec. 9, 2015), *adopted*, C.A. No. 15-018ML, 2016 WL 126744 (D.R.I. Jan. 11, 2016).  Although Plaintiff declined Pioneer's suggestion of treatment through physical therapy for financial reasons, "[t]his is not a case where the adverse credibility finding was wrongly based on the failure to pursue treatment without mention of the claimant's reasons." *Howcroft,* 2016 WL 3063858, at *13.  The ALJ complied with SSR 16-3p by noting Plaintiff's reason for foregoing treatment (A.R. at 148).  *See* SSR 16-3p, 2016 WL 1119029, at *8 (the ALJ "will not find an individual's symptoms inconsistent with the evidence in the record [due to failure to follow prescribed treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").  In August 2012, Plaintiff told the ALJ that he was attempting to obtain physical therapy through the VAMC (A.R. at 215).  *See* SSR 16-3p, 2016 WL 1119029, at *9 (if claimant cannot afford recommended treatment, the ALJ's determination considers whether claimant has "access to free or low cost medical services").  Two years later, however, Plaintiff did not produce evidence that he was participating in physical therapy (A.R. at 148, 870).[6]  The ALJ could reasonably infer that the

---

[6] Without indicating a date, Plaintiff mentions treatment records for a "physical therapy consult" with Tina Marie Dawson at the VAMC, which were submitted to the Appeals Council (Dkt. No. 18 at 14; A.R. at 133-34).  However, because Plaintiff's visit occurred on December 10, 2014, after the ALJ issued his ruling (A.R. at 133-35), and because Plaintiff challenges only the ALJ's decision, the court does not address this record its assessment of the ALJ's conclusion.  *See Miller ex rel. K.M.*, 2011 WL 2462473, at *13 (quoting 20 C.F.R. § 416.1470).  Even if the court

absence of recommended treatment was inconsistent with disabling pain.  *See Mariano*, 2015 WL 9699657, at *11.  Finally, contrary to Plaintiff's contention, the ALJ did not consider Plaintiff's failure to undergo physical therapy as "dispositive" of the credibility determination (Dkt. No. 18 at 14).  It was merely one factor that he considered (A.R. at 146-48).

Even assuming the ALJ erred by including in his credibility assessment Plaintiff's exclusive use of over-the-counter medication and refusal of physical therapy, "the final task is to consider whether these errors so tainted the ALJ's credibility analysis as to require remand for a do-over."  *Howcroft*, 2016 WL 3063858, at *14.  The court finds that they do not.  The ALJ correctly determined that Plaintiff's treatment was conservative notwithstanding the factual errors, and the ALJ's credibility determination is adequately supported by other substantial evidence.  *See Flood v. Colvin,* No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016); *Howcroft,* 2016 WL 3063858, at *14; *Beaudet v. Colvin*, No. CA 14-112 S., 2015 WL 5510915, at *16-17 (D.R.I. Sept. 16, 2015) (when ALJ's credibility finding is neither "terse nor sparse," it properly rests on other substantial evidence, even after exclusion of erroneous grounds). *Compare Dewey v. Colvin*, Civil Action No. 14-30032-MGM, 2015 WL 1476764, at *4 (D. Mass. Mar. 31, 2015) ("The court finds that, even if the ALJ's consideration of pain medicine was improper, the ALJ's credibility assessment and ultimate conclusion are supported by substantial evidence from the record . . . .").  "The administrative record did not include any RFC assessment or relevant opinion evidence about the extent of Plaintiff's functional limitations from any treating source.  Thus, there was no opinion evidence related to disability that would have been presumptively entitled to controlling weight under the treating physician rule."  *Boulia v.*

considers this record, it does not change the ALJ's conclusion that Plaintiff's treatment "has remained conservative" (A.R. at 146).  *See Woods*, 2012 WL 2126893, at *4.

*Colvin*, Case No. 15-cv-30103-KAR, 2016 WL 3882870, at *8 (D. Mass. July 13, 2016).  In

addition, as the ALJ stated, Plaintiff's RFC included limitations reflecting his exertional

limitations due to back pain (A.R. at 148-49).  Accordingly, Plaintiff presents no basis for

reversal or remand of the ALJ's decision.

   3. There is no record evidence that Plaintiff suffered from mental limitations.

  At step two, the ALJ did not include a mental impairment in the list of Plaintiff's severe

impairments and explained that Plaintiff "testified to having no psychological issues and

undergoing no mental health treatment" (A.R. at 144).  Plaintiff criticizes the ALJ for failing to

consider his "mental functional limitations" when determining his RFC (Dkt. No. 18 at 16-18).

Plaintiff's contention is groundless.

  As discussed earlier, "[t]he First Circuit in *McDonald* indicated that question 2 is

intended to screen out frivolous claims."  *Deforge v. Astrue*, C.A. No. 09-cv-30173-MAP, 2010

WL 3522464, at *6 (D. Mass. Sept. 9, 2010) (citing *McDonald*, 795 F.2d at 1122).  *See also*

*Bowen,* 482 U.S. at 146.  It was Plaintiff's burden to demonstrate "the severity of [his]

condition."  *Deforge*, 2010 WL 3522464, at *6 (citing *McDonald,* 795 F.2d at 1122).  *See also*

*Freeman v. Barnhart,* 274 F.3d 606, 608 (1st Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(2).  "When

a claimant produces evidence of an impairment, the commissioner may make a determination at

Step 2 that the impairment is not severe only when the medical evidence 'establishes only a slight

abnormality or combination of slight abnormalities which would have no more than a minimal

effect on an individual's ability to work even if the individual's age, education, or work

experience were specifically considered.'"  *McDonald,* 795 F.2d at 1124 (quoting SSR 85–28,

1985 WL 56856, at *3 (1985)).

Plaintiff failed to sustain his burden of demonstrating that he suffered from any mental impairment that the ALJ should have taken into account when crafting the RFC.  *See Dalis v. Barnhart*, No. Civ.A. 02-10627-DPW, 2003 WL 21488526, at *7 (D. Mass. June 24, 2003) ("Because the claimant never said he had a mental impairment, and because he submitted scant evidence relating to such an impairment, the ALJ was under no obligation to consider the claimant disabled on that basis.").  *See also Munoz v. Sec'y of Health & Human Servs.*, 788 F.2d 822, 823 (1st Cir. 1986) (a step two impairment is determined on the basis of medical evidence) (citing SSR 85–28, 1985 WL 56856, at *3-4); 20 C.F.R. § 404.1520(c).  The only record evidence of a mental disorder is contained in treatment notes from September and October 2009 and May 2010.  In 2009, Plaintiff told Dr. Silvia that he would lose his job "soon" and Dr. Silvia diagnosed Plaintiff with acute adjustment disorder with insomnia and depression (A.R. at 691-93).  Seven months later in May 2010, Plaintiff told Dr. Quirarte that his recent job loss was causing "stress" (*id.* at 625).  Thereafter, in 2012 and 2014, Plaintiff's mood was described as "euthymic" and screenings for depression were negative (*id.* at 869-70, 907-08, 961).  Plaintiff denied having any mental health issues at the first hearing before the ALJ in August 2012 (*id.* at 206).  In 2014, Plaintiff told the ALJ that although his pain caused him to become angry "real quick" and he was lethargic, he did not take medication for a mental health condition and was not being treated by a mental health professional (*id.* at 144, 172-73, 181, 182).[7]  The lack of mental health treatment supports the ALJ's finding that Plaintiff did not suffer from a mental

---

[7] Plaintiff, again, discusses treatment records from May 2015, which was after the ALJ's decision on October 31, 2014 (Dkt. No. 18 at 17; A.R. at 87-89).  For the reasons discussed earlier, the court does not consider evidence that was not presented to the ALJ and, even if the records are addressed, they do not alter the outcome because Plaintiff's status remained unchanged:  he was not receiving mental health treatment; and he had no identified functional limitation arising from a mental health impairment (A.R. at 89).

impairment that impacted his RFC.  *See Irlanda Ortiz,* 955 F.2d at 769 (ALJ may view a lack of

treatment as evidence that a claimed impairment is not as severe as alleged); *Perez Torres v.*

*Sec'y of Health & Human Servs.,* 890 F.2d 1251, 1255 (1st Cir. 1989) (same).  Accordingly, the

ALJ's step two decision is supported by substantial evidence.

IV.     CONCLUSION

The ALJ's finding that Plaintiff could perform his past relevant work as an instructor is

supported by substantial evidence and is free of legal error.  *See Rodriguez Pagan*, 819 F.2d at 3

("We must affirm the [Commissioner's] resolution, even if the record arguably could justify a

different conclusion, so long as it is supported by substantial evidence.").  For the reasons stated

above, Plaintiff's motion  for  judgment on the pleadings Dkt. No. 17) is DENIED, and the

Acting Commissioner's motion to affirm the decision (Dkt. No. 22) is GRANTED.  The case will

be closed.

It is so ordered.

Dated:  March 31, 2017                                    /s/ Katherine A. Robertson
                                                         KATHERINE A. ROBERTSON
                                                         United States Magistrate Judge